UNITED STATES of America, Appellee,

v.

Shirley P. RECCKO, Defendant, Appellant.

No. 98–1176.

United States Court of Appeals, First Circuit.

Heard July 28, 1998.

Decided Aug. 10, 1998.

---

Thomas G. Briody, by appointment of the court, for appellant.

Richard W. Rose, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, was on brief, for appellee.

Before SELYA, BOUDIN and LIPEZ, Circuit Judges.

SELYA, Circuit Judge.

This single-issue sentencing appeal requires us to decide whether the district court properly applied the two-level enhancement for abuse of a position of trust, USSG

§ 3B1.3 (1997), in calculating the defendant's guideline sentencing range (GSR). Concluding, as we do, that the court erred, we vacate the defendant's sentence and remand for resentencing.

## I. BACKGROUND

The relevant facts are not seriously disputed. The defendant, Shirley P. Reccko, was a civilian employee of the city of Warwick, Rhode Island. She toiled as a receptionist/switchboard operator at police headquarters, handling incoming telephone calls and notifying persons in authority when visitors arrived at the stationhouse.

On December 14, 1995, several groups of Drug Enforcement Administration (DEA) agents came to the station to see a narcotics detective. The defendant observed the influx and told her drug-dealer friend, Patrick Vigneau, what she had seen. After receiving the tip, Vigneau directed his supplier to cancel a sizable marijuana delivery that had been scheduled to take place that evening at a Warwick motel. As matters turned out, one of the participants in the planned transaction was a government informant, and the DEA agents had gathered at the police station preparatory to interceding in that very delivery. Its abrupt cancellation thwarted their stratagem.

In the long run, however, the DEA prevailed. Agents soon arrested Vigneau's supplier, who cooperated with the government and inculpated Vigneau. The supplier-turned-cooperating-witness also confirmed the link between the defendant's tip and the cancellation of the delivery—a piece of information that the authorities easily corroborated, as the defendant had spoken with Vigneau on a monitored line.

Reccko ultimately pled guilty to a charge that she unlawfully gave notice of an impending search and seizure. See 18 U.S.C.A. § 2232(b) (West Supp.1994). At the disposition hearing, the parties quarreled over the GSR. As relevant here, the defendant asseverated that her offense level should not be elevated pursuant to USSG § 3B1.3 because she did not hold a position of trust. The district court nonetheless applied the enhancement, thereby boosting the offense lev-

el and yielding a GSR of 15–21 months.[1] The district court then imposed an incarcerative sentence at the bottom of the range. This appeal ensued.

## II. DISCUSSION

■ The defendant, ably represented by appointed counsel, contends that the district court misinterpreted § 3B1.3 by expanding the "position of trust" rubric to include a receptionist/switchboard operator whose duties included no significant discretionary functions. We review the district court's interpretation of the sentencing guidelines, and, thus, its handling of this interpretive question, de novo. *See United States v. Tardiff,* 969 F.2d 1283, 1289 (1st Cir.1992) ("The court of appeals must determine for itself the legal meaning of terms such as 'position of public or private trust.'").

The disputed guideline provides in pertinent part:

> If the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase [the defendant's offense level] by 2 levels.

USSG § 3B1.3. The commentary indicates that the enhancement "applies to persons who abuse their positions of trust ... to facilitate significantly the commission or concealment of a crime." *Id.,* comment (backg'd).

■ On a superficial reading of this language, a receptionist/switchboard operator position at police headquarters might well seem to be a position of trust. After all, police headquarters is the nerve center of local law enforcement, and one ought to be able to "trust" any person employed there. The sentencing guidelines, however, create their own vocabulary—and the guidelines sometimes define terms in ways that might strike lay persons as peculiar. So it is here: in the idiom of the sentencing guidelines, the term "position of public or private trust" has a special meaning. The application notes, as amended in 1993, explain that positions of trust are characterized by significant discretion and minimal supervision:

"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

*Id.,* comment. (n.1).

Consistent with this application note's stated method, we have directed sentencing courts to conduct a two-step inquiry into the possible applicability of an enhancement under § 3B1.3. First, the court must determine whether the defendant occupied a position of trust at all. If not, the inquiry ends and no enhancement accrues. If, however, this initial query produces an affirmative response, the court must proceed to ascertain the extent to which the defendant used that position to facilitate or conceal the offense. *See United States v. Gill,* 99 F.3d 484, 489 (1st Cir.1996); *United States v. Santiago–Gonzalez,* 66 F.3d 3, 8 (1st Cir.1995).

Here, the lower court noted that the defendant's particular situation was not covered explicitly either by the guideline commentary or by existing precedent, and so proceeded to "discern from the guidelines themselves what the intent of the Sentencing Commission was." In the course of this exercise, the

---

**1.** Without the position-of-trust enhancement, the GSR would have been 10–16 months.

court concluded that, because the defendant was exposed to sensitive information in her public employment and used that information illicitly, she abused a position of public trust. The court reasoned:

> This Defendant, although she did not hold a position as a police officer or as a police dispatcher, held a position of trust. She was in a unique position to take incoming phone calls and to route individuals [from] outside of the Warwick Police Department to the appropriate location within the building for purposes of their massing for what was to be a drug raid. She had the ability to take those calls. She knew who was calling. She had to ask people who they were in order to send them to the right place within the building. And so she was uniquely situated to receive extremely sensitive information, which she then took upon herself and initiated the contact with [the drug-dealer] to give him the very sensitive information which he needed. . . .

> \* \* \* \* \* \*

> So I find that on this unique set of facts, with an individual who is employed by a public agency, a public agency that happens to be the police department whose responsibilities are public safety, and where she was in the significant and unique position to tak[e] in sensitive information, that she abused the trust that was placed in her by taking that very information and taking the initiative to call [the drug-dealer] to head off the raid.

We do not believe that the district court's analysis squares with the special meaning of "position of public or private trust" that the guidelines prescribe. In essence, the court eschewed the two-step approach specified by our cases and instead conflated the requisite inquiries. Rather than asking, first, whether the defendant held a position of trust, and if so, whether she used that position to facilitate a crime, the court essentially determined that the defendant held a position of trust precisely because her job enabled her to commit the crime. We conclude that this was error.

The foremost flaw in the court's reasoning is that it ignores the attributes of a position of trust limned in the controlling application note. This omission is telling, as guideline commentary is binding unless it violates federal law, is inconsistent with the guidelines themselves, or is based upon a plainly erroneous reading of a guideline provision. *See Stinson v. United States,* 508 U.S. 36, 42–43, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993); *United States v. Fiore,* 983 F.2d 1, 2 (1st Cir.1992). The commentary here suffers from none of these vices. Thus, the sentencing court should have adhered to the application note. The court did not do so. Instead, the court deviated from it by failing to account for whether the receptionist/switchboard operator position embodied the kind of "professional or managerial discretion" that the Sentencing Commission has made the signature characteristic of a position of trust. *See* USSG § 3B1.3, comment. (n.1); *see also United States v. Becraft,* 117 F.3d 1450, 1452–53 (D.C.Cir.1997); *United States v. McMillen,* 917 F.2d 773, 775 (3d Cir.1990).

When a sentencing court erroneously applies a guideline, we often remand for the court to make a new finding. *See, e.g., United States v. Jackson,* 30 F.3d 199, 204 (1st Cir.1994); *United States v. Mariano,* 983 F.2d 1150, 1157 (1st Cir.1993). Here, however, the undisputed facts indicate quite plainly that the defendant's position was not invested with any substantial degree of discretion.

Reccko answered the telephone and relayed calls. She also announced visitors, but she did not have discretion either to screen them or to admit them to the non-public areas of the stationhouse. She was closely supervised, and the telephone lines that she regularly used were monitored. All in all, Reccko's position afforded her access to information, but reposed in her no discernible discretion. Indeed, at oral argument in this court the prosecutor admitted that the receptionist/switchboard operator position involved no significant discretionary authority. Under these circumstances, we deem the receptionist/switchboard operator job to be on a par with the bank teller and hotel clerk positions that the Sentencing Commission

identified as non-trust positions. *See* USSG § 3B1.3, comment. (n.1). By like token, the job is a fair congener of other non-professional, non-managerial posts in public and private employment that courts routinely have found not to be positions of trust. *See, e.g., United States v. Ragland,* 72 F.3d 500, 503 (6th Cir.1996) (customer service representative at bank); *United States v. West,* 56 F.3d 216, 220 (D.C.Cir.1995) (courier); *United States v. Smaw,* 22 F.3d 330, 332 (D.C.Cir. 1994) (time-and-attendance clerk for federal agency).

The government's counter-arguments lack force. It asserts, first, that despite the Commission's apparent insistence that positions of trust are characterized by significant discretion and minimal supervision—attributes that the government concedes are absent here—our decisions have expanded the contours of the Commission's definition. To substantiate this claim, the government cited at oral argument our opinion in *United States v. Innamorati,* 996 F.2d 456 (1st Cir. 1993). *Innamorati* cannot bear the weight that the government loads upon it.

To the extent relevant, the *Innamorati* case involved a defendant, one Thompson, who had been a police officer at the Registry of Motor Vehicles and had employed that position to obtain access to information later used to facilitate a drug-trafficking conspiracy. *See id.* at 490. Police officers regularly exercise significant discretion, and, thus, Thompson occupied a position of trust. *See id.* (citing *United States v. Rehal,* 940 F.2d 1, 5 (1st Cir.1991)). It made no difference that Thompson was assigned to desk duty. *See id.* From this brief account, it is readily apparent that the *Innamorati* decision does not in any way, shape, or form support the claim that a closely supervised position which lacks meaningful discretion nevertheless can be regarded as "a position of public or private trust" under § 3B1.3 merely because occupying the position makes it easier for the holder to gain access to facilitative information.

It is true that in dealing with the position-of-trust enhancement courts occasionally have emphasized the employee's freedom to commit wrongs that defy facile detection.

*See, e.g., Tardiff,* 969 F.2d at 1289; *United States v. Hill,* 915 F.2d 502, 506 (9th Cir. 1990). But these decisions deal with earlier versions of § 3B1.3 and, thus, antedate the Sentencing Commission's emphasis on managerial or professional discretion (which was inserted into the application note by an amendment that took effect on November 1, 1993). In all events, the paradigm has no bearing here. The defendant's position did not furnish her with any such freedom, as most of the telephone lines at the station—including the line that she used when speaking to Vigneau—were continuously monitored. This circumstance virtually ensured that her tip would be easily detected (as, indeed, it was).

The United States also suggests that the general public safety function of the police department transforms the receptionist/switchboard operator position to one of public trust. We think not. Although this court, as in *Innamorati,* 996 F.2d at 490 and *Rehal,* 940 F.2d at 5, has not hesitated to affirm § 3B1.3 enhancements as applied to police officers who commit certain offenses, we see no principled basis for extending the enhancement to civilian employees of a municipality, assigned to work at police headquarters or comparable venues, whose jobs do not possess the requisite accouterments of positions of trust. *Accord United States v. Long,* 122 F.3d 1360, 1365–66 (11th Cir.1997) (holding that prison food service foreman was not in a position of trust for purposes of § 3B1.3).

We have one more bridge to cross. The commentary to USSG § 3B1.3 contains an express exception for postal workers, rendering the position-of-trust enhancement applicable to any postal employee committing certain enumerated offenses, regardless of the incidence *vel non* of discretion. The Sentencing Commission has explained that "because of the special nature of the United States mail, an adjustment for an abuse of a position of trust will apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail." USSG § 3B1.3, comment. (n.1). The district court apparently believed that this exception strengthened the case for

applying § 3B1.3 to Reccko,[2] and the government indicates its agreement with this proposition. We demur. There is simply no basis, either in language or in policy, for expanding the postal workers' exception beyond its terms. The maxim *"expressio unius est exclusio alterius"* is a useful interpretive tool in construing the sentencing guidelines. *See Smaw*, 22 F.3d at 332–33; *United States v. Newman*, 982 F.2d 665, 673–74 (1st Cir. 1992). If the Sentencing Commission had intended additional types of public employees to be subject to the position-of-trust enhancement without regard to their level of professional or managerial discretion, it doubtless would have said so.

## III. CONCLUSION

We need go no further.[3] We recognize that there may well be sound arguments for enhancing the sentence of a public employee who, though supervised and lacking in discretion, is peculiarly situated to imperil law enforcement activities and even to jeopardize the safety of police officers through unlawful conduct. Withal, the guidelines say what they say—and rewriting them is a matter for the Sentencing Commission, not for the courts. Consistent with the guidelines as written and explained by the Sentencing Commission, we conclude that the defendant did not hold a position of trust within the meaning of USSG § 3B1.3. Because the district court erroneously ruled to the contrary, we vacate the defendant's sentence and remand for resentencing.

*Vacated and remanded.*

---

**2.** · The court acknowledged that a bank teller who embezzles would not merit the enhancement. *See* USSG § 3B1.3, comment. (n.1). The court then added:

> We also have a special notation in the application notes dealing with letter carriers. And letter carriers are treated differently than bank tellers because of the special nature of the United States mail. And I found that the reference to letter carriers was instructive here.

**3.** Because resentencing is required, we need not address Reccko's alternative argument that the trial judge violated Fed.R.Crim.P. 32(c)(1) by failing to resolve disputed factual questions germane to the imposition of the position-of-trust enhancement.