**UNITED STATES of America,**
**Plaintiff,**

v.

**Sharon A. LEE, Defendant.**

**No. CRIM.03–83–B–W.**

United States District Court,
D. Maine.

June 4, 2004.

Donald F. Brown, Bangor, ME, James L. Burke, U.S. Attorney's Office, Bangor, ME, for Sharon A Lee (1), USA, Defendants.

## *ORDER*

WOODCOCK, District Judge.

Abusing her position as a customer marketing advisor at MBNA, America (MBNA), Defendant Sharon A. Lee (Lee) used the special skills she had learned on the job to steal $28,849.70 from her employer. However, because her position at MBNA was not a "position of trust" and she did not use a "special skill" as those terms are defined in the United States Sentencing Guidelines, this Court declines to apply the two level enhancement under § 3B1.3 (Abuse of Position of Trust and Use of Special Skill) to the guideline calculations in her case.

## I. Factual Background

In April 1999, Defendant Sharon A. Lee (Lee) began work in the entry-level position of "customer marketing advisor" for MBNA, America (MBNA), Belfast, Maine. As a customer marketing advisor (CMA), Lee addressed routine customer services inquiries, including changing addresses, replacing lost cards, and responding to basic financial questions. Lee was also responsible for applying payments to customer accounts and handling transfers from customer credit card accounts to checking accounts. Lee did not have the authority to open customer accounts, to loan money, or to increase credit limits on accounts. MBNA had the ability to monitor Lee's activities by her unique "user ID." MBNA employed approximately 700–800 other persons in the same or similar positions.

Beginning in October 2002, Lee accessed customer accounts with similar names to her own or that of her husband, Daniel Lee. She changed the names and addresses of the account holders; issued new credit cards; wrote checks from customers' accounts; and, made direct deposits into her personal checking account. In May 2003, Lee made two requests for direct deposits of funds into her personal checking account. These requests triggered an inquiry by the MBNA Fraud Unit, which began an investigation into Lee's activities. When confronted, Lee provided a full account of her activities to MBNA.

## II. Discussion

### A. Abuse of Position of Trust.

In its Pre–Sentence Report (PSR), the Office of Probation recommended an upward adjustment of 2–levels pursuant to United States Sentencing Guideline § 3B1.3. Section 3B1.3 states, "If the defendant abused the position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense, increase by two levels." U.S.S.G. § 3B1.3. Lee objects to this recommendation and the Government does not oppose Lee's objection.

█ Section 3B1.3 permits the sentencing court to increase a defendant's offense level by two levels if the defendant (1) occupied a position of trust vis-à-vis her employer; and (2) utilized this position of trust to facilitate or conceal her offense. *See, e.g., United States v. Chanthaseng*, 274 F.3d 586, 589 (1st Cir.2001); *United*

*States v. Reccko,* 151 F.3d 29, 31 (1st Cir. 1998); *United States v. Gill,* 99 F.3d 484, 489 (1st Cir.1996). This Court's analysis stops at the first question: Lee did not occupy a position of trust within the meaning of § 3B1.3 and, therefore, the enhancement cannot apply. *Reccko,* 151 F.3d at 30 (noting "[f]irst, the court must determine whether the defendant occupied a position of trust at all. If not, the inquiry ends and no enhancement accrues.")

According to the Federal Sentencing Guidelines, a "position of public or private trust" is marked by professional or managerial discretion. U.S.S.G. § 3B1.3, cmt. n. 1. The Guideline Commentary notes that "[t]his adjustment *does not* apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors." U.S.S.G. § 3B1.3, App. n. 1 (emphasis added).

Consistent with the Guideline Commentary, the First Circuit Court of Appeals has defined "position of trust" as a position "characterized by professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference"). *Reccko,* 151 F.3d at 31. *See also, United States v. O'Connell,* 252 F.3d 524, 528 (1st Cir.2001); *Chanthaseng,* 274 F.3d at 589; U.S.S.G. § 3B1.3. Applying this definition, the First Circuit held that a bank executive would qualify for an upward adjustment, but a bank teller would not. *O'Connell,* 252 F.3d at 528; *see also Reccko,* 151 F.3d at 31–33 (finding that "a receptionist/switchboard operator at police headquarters, although entrusted with sensitive information, did not hold a position of trust, because the job afforded 'no discernible discretion.'"). Employees in positions of trust with "discernable discretion" are typified by "significantly less supervision than employees whose responsibilities are primarily non-

discretionary in nature." *Reccko,* 151 F.3d at 31. For the enhancement to apply, the employee's position must have "contributed in some significant way to [the facilitation of] the commission or concealment of the offense (*e.g.,* by making the detection of the offense or the defendant's responsibility for the offense more difficult)." *Id.*

Lee's position at MBNA was more analogous to a bank teller than a bank executive. All CMA's employed by MBNA answer to a direct supervisor, although, as the Government noted, customer transactions are not immediately reviewed due to the volume of transactions. MBNA has other means of restricting the discretionary acts of customer activation specialists, such as random monthly reviews and inquiries by the MBNA Fraud Unit. Despite her ability to access customer accounts, Lee's essential duties centered around requests from MBNA customers, specifically regarding existing accounts. Importantly, Lee had neither the opportunity nor the authority to open customer accounts, to loan money, or to increase credit limits on accounts. While it is clear Lee abused her position of trust, she was without the requisite "discernable discretion" in her position as a CMA. *O'Connell,* 252 F.3d at 528; *Reccko,* 151 F.3d at 31–33. Thus, an upward adjustment in this case is not appropriate.

**B. Special Skill.**

██ The Government argues an upward adjustment under the "special skill" enhancement is similarly inappropriate. The Court agrees. A "special skill," as envisioned by § 3B1.3, is an expertise not possessed by members of the general public, usually requiring substantial education, training, or licensing. Examples would include "pilots, lawyers, doctors, accountants, chemists, and demolition experts."

U.S.S.G. § 3B1.3 cmt. n. 3; *United States v. Nelson–Rodriguez,* 319 F.3d 12, 58 (1st Cir.2003); *United States v. Noah,* 130 F.3d 490, 500 (1st Cir.1997). A defendant does not need to have formal education or professional stature to have a special skill within the meaning of § 3B1.3; a "special skill" can be derived from experience or self-tutelage. *Nelson–Rodriguez,* 319 F.3d at 58; *Noah,* 130 F.3d at 500. *See, e.g., United States v. Gandy,* 36 F.3d 912, 914 (10th Cir.1994); *United States v. Lavin,* 27 F.3d 40, 41 (2d Cir.1994).

True, it is unlikely members of the general public could navigate the MBNA computer system to accomplish the fraudulent transfers Lee perpetrated. *See United States v. Montero–Montero,* 370 F.3d 121 (1st Cir.2004); *United States v. Calderon,* 127 F.3d 1314, 1339–40 (11th Cir.1997) (stating "captaining a vessel on the high seas is the type of activity that requires skills not possessed by members of the general public"). But the same could be said of bank tellers, and the § 3B1.3 Commentary expressly excludes bank tellers from positions of trust. It would be incongruous for the Guidelines to exclude employees in positions similar to bank tellers from the § 3B1.3 definition of positions of trust, only to include them under the section's special skill provision.

■ Lee used neither a special skill nor special training within the meaning of the Guidelines to facilitate her criminal activities. In fact, she was one of 700–800 persons employed by MBNA in the same position, all of whom were provided the same entry-level training. An upward adjustment based upon a special skill would be unwarranted.

### III. Conclusion.

In *United States v. Reccko,* Judge Selya wrote that "the guidelines sometimes define terms in ways that might strike lay persons as peculiar." 151 F.3d at 31. This is one of those peculiar instances. In concluding that Lee did not abuse a position of trust or use a special skill within the meaning of § 3B1.3, this Court does not imply any approval of her disloyalty to her employer or her manipulation of its computer system for her own gain. This Court concludes only that § 3B1.3 does not contemplate a two level enhancement for her activity.