# United States Court of Appeals
## For the First Circuit

No. 05-1566

UNITED STATES OF AMERICA,

Appellee,

v.

OMAR PARRILLA ROMÁN,

Defendant, Appellant.

_____

No. 05-1863

UNITED STATED OF AMERICA,

Appellee,

v.

CARLOS JAVIER ORTIZ SANTIAGO,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Circuit Judge,

Selya and Tashima,* Senior Circuit Judges.

---

     Ramón García García on brief for appellant Parrilla Román.
     Jorge L. Armenteros-Chervoni for appellant Ortiz Santiago.
     Nelson Pérez-Sosa, Assistant United States Attorney, with whom
Rosa Emilia Rodríquez-Vélez, United States Attorney, was on brief,
for the United States.

---

May 9, 2007

---

_____
*Of the Ninth Circuit, sitting by designation.

**SELYA**, **Senior Circuit Judge**.  These sentencing appeals reverberate with the echo of a question that we thought we had laid to rest in United States v. Reccko, 151 F.3d 29 (1st Cir. 1998). This question involves the application of the two-level enhancement for abuse of a position of trust under the current version of the federal sentencing guidelines.  See USSG §3B1.3 (2006). Concluding, as we do, that the district court erred in its application of this guideline, we vacate the defendants' sentences and remand for resentencing consistent with this opinion.

## I.  BACKGROUND

Because these appeals follow the entry of guilty pleas, we take the relevant facts from the defendants' change-of-plea colloquies, the uncontested portions of the presentence investigation reports, and the transcripts of their disposition hearings.  See United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).  The tale follows.

In more tranquil times, defendants-appellants Carlos Javier Ortiz Santiago (Ortiz) and Omar Parrilla Román (Parrilla) worked as fleet service clerks for American Airlines at the Luis Muñoz Marín International Airport in Carolina, Puerto Rico.[1]  Fleet service clerks are responsible for loading and unloading cargo onto

---

[1] Originally, the airline listed Ortiz's job title as "ramp agent."  He later became a fleet service clerk.  The district court and the parties seem to have employed the two titles interchangeably.  Because nothing turns on this nomenclative point, we use the latter title.

and off of passenger aircraft, handling mail and freight for shipment by air, and cleaning the interior areas of passenger aircraft. They also drive airline vehicles, operate machinery, guide aircraft through ground-level arrival and departure maneuvers, and help to de-ice airplanes when required. Judging by the defendants' rates of pay, fleet service clerks earn from $10.00 - $12.50 an hour.

In 2003, the defendants supplemented their workload (and, presumably, their income) by conspiring with others to transport cocaine from Puerto Rico to various destinations on the mainland. The basic scheme, with minor variations from caper to caper, operated as follows. Ortiz would receive a suitcase containing cocaine, which he would then carry or drive through security checkpoints without inspection. He then ensured that the suitcase was stowed safely aboard a designated departure-bound airplane. For his part, Parrilla made sure that his confederates knew that "the bird is in flight"; that is, that a cocaine-laden suitcase had been placed aboard a pre-selected flight. On at least two occasions, he provided coconspirators with a baggage claim ticket, flight information, and the assumed name that had been used for such a suitcase.

In due season, federal agents unearthed the plot. An indictment followed apace. To make a tedious tale tolerably terse, both Ortiz and Parrilla eventually pleaded guilty to a count that

charged conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841, 846.

The district court sentenced Parrilla on March 11, 2005. The main battle was over the applicability vel non of the position-of-trust enhancement. See USSG §3B1.3. Parrilla argued that, given his duties as a fleet service clerk, he had no managerial discretion, played no supervisory role, and thus could not be deemed to occupy a position of trust. Parrilla buttressed his argument with a copy of the job description for the fleet service clerk position. The argument was in vain. The district court imposed the position-of-trust enhancement, stating:

> Now, you have submitted a copy of the job description, and that is fine. But let's take it one step prior to the job description. If [Parrilla] did not have a security clearance from the Ports Authority whereby he had to comply with certain conditions to obtain the security clearance, he would not have been able to be employed by American Airlines.
>
> . . . .
>
> The facts that your client accepted when he pled guilty include[] the fact that once inside the airport, the suitcase was provided to the co-defendant, who insured that the suitcase made it on board . . . .
>
> . . . .
>
> . . . But he is there in that position because he held a position of trust or a secured position within the airport, as authorized by Ports Authority.

-5-

> So if he had not had that security clearance, he would not have been in a position to insure that the luggage got on the airplane. And that is why his position of private trust did contribute in some significant way to facilitating the commission of the crime. Otherwise, the suitcases would not have been put on board.

Combined with Parrilla's base offense level, other adjustments, and criminal history category (I), the offense level increase yielded a guideline sentencing range (GSR) of 87-108 months. Without the enhancement, the GSR would have been 70-87 months. The court levied an 87-month incarcerative term — the bottom of the calculated GSR.

The district court convened Ortiz's disposition hearing on April 28, 2005. The hearing unfolded and concluded in much the same manner. Pertinently, Ortiz argued that, as a mere baggage handler, he had no professional or managerial discretion and could not be deemed to occupy a position of trust. The government countered that because he had a security clearance that enabled him to pass unchallenged through security checkpoints and transport drugs through restricted areas of the airport without being stopped, he occupied a position of trust.

The district court accepted the government's logic. It reasoned:

> [N]ot everybody can qualify for [the fleet service clerk] position. First of all, they have to go through a security check of the airport. They have to submit background information. They have to submit background

records.  They have to have a police clearance from the police that no criminal record is involved, and after going through all that, then the airport personnel provides this individual with a pass, which they have to carry all the time with their photograph, which allows them to go into a secured area.

So in that sense, the Defendant is being allowed to go into a secured area because he holds a position of trust. Otherwise, he wouldn't be going into the secured area. Once . . . he is identified as being a person of trust within the secured area of the airport, then he's able to move in and out from the secured area to the other areas of the airport to bring in suitcases without having them inspected, and furthermore, to being able to place them in the airplanes . . . .

With this predicate in mind, the district court concluded that Ortiz, like Parrilla, should receive a position-of-trust enhancement because his position had contributed significantly to the commission of the offense of conviction.

The court increased Oritz's offense level accordingly. Combined with his base offense level, other adjustments, and criminal history category (I), this increase yielded a GSR of 87-108 months.  Without the enhancement, the GSR would have been 70-87 months.  The court sentenced Ortiz to serve a low-end 87-month incarcerative term and to pay a $5,000 fine.

Both Parrilla and Ortiz appealed their sentences.  This court consolidated the two appeals.

## II. DISCUSSION

The principal issue on appeal is the defendants' claim that the district court erred in imposing the position-of-trust enhancements. Ortiz also attempts to raise a further claim that the district court abused its discretion in failing to reconsider the imposition of the fine. We consider these claims sequentially.

Our standard of review is familiar. Following the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 245 (2005), which rendered the federal sentencing guidelines advisory, the guidelines remain the starting point for sentencing determinations. See United States v. Gobbi, 471 F.3d 302, 313 & n.7 (1st Cir. 2006); United States v. Jiménez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006) (en banc), cert. denied, 127 S. Ct. 928 (2007). This means that, as a first step in the sentencing pavane, the district court must calculate a defendant's GSR. In the typical case, the correctness of that calculation is a necessary precondition to a reasonable sentence. See, e.g., United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005).

In reviewing such a calculation, we accept the sentencing court's findings of fact unless they are clearly erroneous. See United States v. Dixon, 449 F.3d 194, 200 (1st Cir. 2006). We review de novo, however, the court's interpretation and application of the guidelines. See United States v. Pho, 433 F.3d 53, 60 (1st Cir. 2006).

-8-

### A. **Position of Trust**.

The guideline at issue here provides:

> If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase [the defendant's offense level] by 2 levels.

USSG §3B1.3. An application note elaborates:

> 'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

Id., cmt. n.1.

Consistent with this guideline and the quoted application note, we have constructed, and directed sentencing courts to use, a two-step process for determining whether a position-of-trust

enhancement should be imposed. The sentencing court must first answer the status question: Did the defendant occupy a position of trust? If not, the inquiry ends. If, however, the status question produces an affirmative response, the court must then answer the conduct question: Did the defendant use that position to facilitate significantly the commission or concealment of the offense? See Reccko, 151 F.3d at 31; United States v. Gill, 99 F.3d 484, 489 (1st Cir. 1996); United States v. Santiago-Gonzalez, 66 F.3d 3, 8 (1st Cir. 1995). The two steps are separate. As we explained in Reccko, 151 F.3d at 32, care must be taken not to conflate them.

In imposing a position-of-trust enhancement pursuant to section 3B1.3, the Reccko district court incorrectly determined that the defendant, a switchboard operator at a municipal police headquarters, held a position of trust precisely because her job provided her with the access needed to commit the charged crime (unlawfully tipping off a suspect to an impending raid). See id. The sentencing court's determination here suffers from much the same infirmity. Rather than first posing the status question — asking whether the fleet service clerk position was characterized by professional or managerial discretion and minimal supervision — the court jumped immediately to the conduct question, zeroing in on the defendants' ready access to restricted areas of the airport. The court then used that access as the basis for a blanket answer

-10-

to both the status and the conduct questions. That analysis merged the two distinct steps that Reccko requires.

Recognizing the inconsistency between the district court's approach and the Reccko paradigm, the government tries to distinguish Reccko on the ground that there was no evidence in that case to suggest that the defendant had obtained a security clearance. To support the relevance of this suggested distinction, the government cites United States v. Castagnet, 936 F.2d 57 (2d Cir. 1991), for the proposition that "[t]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." Id. at 61-62 (citation and internal quotation marks omitted). Castagnet is inapposite: that decision dealt with a now-obsolete version of section 3B1.3 that antedated the Sentencing Commission's clear focus on professional or managerial discretion and minimal supervision. See Reccko, 151 F.3d at 33. Without more, the security clearance awarded to Ortiz and Parrilla cannot transmogrify a menial position into a position of trust. Cf. United States v. Edwards, 325 F.3d 1184, 1187 (10th Cir. 2003) (rejecting position-of-trust enhancement for clerical position where government alleged "virtual exclusive control" over customer accounts).

Relatedly, the government indulges in an unabashed attempt at bootstrapping. It says that since the defendants were

successful for a time in smuggling contraband into the airport, their positions must have entailed minimal supervision. That turns the guideline on its head: it does not follow that, merely because a defendant's position enables him to commit an offense, the position must have been unsupervised and, thus, a position of trust. Cf. id. (explaining that "[o]pportunity and access" do not equate with substantial discretionary judgment); United States v. Sierra, 188 F.3d 798, 802 (7th Cir. 1999) (explaining that the ultimate success of the criminal enterprise is not an independent measure of significant facilitation).

The government's citation to our decision in United States v. Casas, 356 F.3d 104 (1st Cir. 2004), is equally unhelpful. While the district court in that case imposed a myriad of upward adjustments, including a position-of-trust enhancement, on a defendant who worked as a baggage handler for American Airlines, the status question was not an issue on appeal. Rather, insofar as the position-of-trust enhancement was concerned, the panel dealt only with an Apprendi challenge. See id. at 128 (discussing Apprendi v. New Jersey, 530 U.S. 466 (2000)). We were not asked to decide, nor did we decide, whether the position-of-trust enhancement comported with the guideline.

There is no need to tarry. At bottom, the government's arguments vividly illustrate its lack of comprehension of (or, perhaps, its stubborn unwillingness to accept) the standard that we

-12-

delineated in Reccko. That is particularly unfortunate here because the facts, as developed in the district court, will not support a finding that the fleet service clerk positions are positions of trust within the meaning of USSG §3B1.3. After all, the government concedes that neither Ortiz nor Parrilla was afforded discretion to establish policies or to supervise co-workers. Moreover, nothing in the record suggests that either of the two men toiled under minimal supervision. To the contrary, the kinds of tasks typically required of fleet service clerks (e.g., loading and unloading cargo, cleaning cabin interiors, and guiding taxiing aircraft) are the kinds of tasks that almost invariably require oversight.

In all events, the government bears the burden of proving the applicability of the position-of-trust enhancement. See United States v. Connell, 960 F.2d 191, 197 (1st Cir. 1992). It suffices to say that the government has not carried that burden here. The fleet service clerk position appears to be on par with the switchboard operator position described in Reccko and with the bank teller and hotel clerk positions identified by the Sentencing Commission as non-trust positions. See USSG §3B1.3, cmt. n.1; see also United States v. West, 56 F.3d 216, 220 (D.C. Cir. 1995) (courier). Because neither of the defendants held a position of public or private trust, the district court erred in enhancing their offense levels under section 3B1.3.

## B. **The Fine**.

As a postscript of sorts, we briefly address Ortiz's objection to the $5,000 fine imposed by the district court (an objection that he couches in the form of an objection to the denial of his serial motions to reconsider the fine). As we explain below, he has waived his right to appeal that impost.

Ortiz pleaded guilty pursuant to a negotiated plea agreement with the government (the Agreement). The Agreement included an explicit commitment that as long as the district court accepted the Agreement and sentenced him in accordance with its terms, he "waive[d] and surrender[ed] his right to appeal the judgment and sentence in this case." The district court accepted the Agreement and, in doing so, received appropriate assurances that this waiver was knowing and voluntary. The court proceeded to sentence Ortiz within the parameters of the Agreement.

In his appellate brief, Ortiz does not mention this waiver. It is easy to see why: the waiver was unequivocal. The only reservation of a right to appeal concerned the possible application of the hotly contested position-of-trust enhancement. See supra Part II(A).

We consistently have upheld properly phrased waivers of the right to appeal from criminal sentencing decisions. See, e.g., United States v. Miliano, 480 F.3d 605, 608 (1st Cir. 2007); United States v. Gil-Quezada, 445 F.3d 33, 36-37 (1st Cir. 2006); United

<u>States</u> v. <u>Teeter</u>, 257 F.3d 14, 25-26 (1st Cir. 2001). There is no apparent reason to depart from this praxis today. <u>See</u> <u>Miliano</u>, 480 F.3d at 608 (explaining that where "the defendant simply ignores the waiver [of appeal] and seeks to argue the appeal as if no waiver ever had been executed, he forfeits any right to contend either that the waiver should not be enforced or that it does not apply"). The waiver, then, undercuts Ortiz's attempt to appeal from the imposition of the fine.[2]

It makes no difference that Ortiz has couched his claim of error in terms of the denial of his serial motions to reconsider the fine. Because Ortiz waived his right to appeal the fine itself, <u>see</u> text <u>supra</u>, we discern no legally cognizable basis on which he can challenge the denial of motions to reconsider its imposition. A criminal defendant who, like Ortiz, knowingly and voluntarily waives his right to appeal all or some part of his sentence, cannot evade the effects of that waiver by the simple

---

[2]Although it may be tantamount to carting coal to Newcastle, we note that a sentencing court has wide discretion in deciding whether or not to impose a fine. <u>See</u> <u>United States</u> v. <u>Savoie</u>, 985 F.2d 612, 620 (1st Cir. 1993). The presumption is that a sentencing court should "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is unlikely to become able to pay any fine." USSG §5E1.2(a). The defendant bears the burden of showing that this presumption should not operate in his case. <u>United States</u> v. <u>Peppe</u>, 80 F.3d 19, 22 (1st Cir. 1996). To carry that burden, he must show an inability to pay the fine either presently or in the future. <u>United States</u> v. <u>Rowe</u>, 268 F.3d 34, 38 (1st Cir. 2001). Given Ortiz's work history, a finding of likely future ability to pay a relatively modest fine was well within the sentencing court's discretion.

expedient of moving to reconsider the unappealable sentence and then appealing the denial of that motion. Cf. United States v. Joiner, 183 F.3d 635, 645 (7th Cir. 1999) (explaining that waiver of appeal of sentence constitutes an implied waiver of the right to raise an ineffective assistance of counsel claim based on "garden-variety attacks on his sentence . . . in the guise of a claim of ineffective counsel").

## III. CONCLUSION

We need go no further. Because the district court erred in imposing position-of-trust enhancements, we vacate the defendants' sentences and remand for resentencing without resort to those enhancements. The guidelines are, of course, advisory in nature, see Booker 543 U.S. at 245, and the district court remains free, after properly calculating the guideline range, to impose reasonable sentences of such duration as it deems fitting. That court, if it so chooses, may also reimpose the disputed fine.

**Vacated and remanded**.