In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3343

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY H. ANDREWS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 06 CR 5—**Barbara B. Crabb**, *Chief Judge.*

ARGUED FEBRUARY 15, 2007—DECIDED APRIL 30, 2007

Before EASTERBROOK, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Anthony Andrews pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 pursuant to a written plea agreement. In calculating his advisory Sentencing Guidelines range, the district court imposed a two-point increase in offense level for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3. The district court sentenced Andrews to sixty months' imprisonment as well as restitution in the amount of $110,045.25. Andrews appeals the district court's two-point adjustment for abuse of a position of trust. We affirm.

**I. BACKGROUND**

Anthony H. Andrews owned and operated Siren Auto Sales, a used car dealership located in Siren, Wisconsin. Andrews was licensed by the State of Wisconsin Department of Transportation as a retail vehicle dealer. As a licensed dealer, Andrews was required to follow Wisconsin Department of Transportation regulations governing the purchase and sale of vehicles.

Wisconsin regulations require a licensed dealer to complete a Used Motor Vehicle Purchase Contract for each used vehicle he sells. If a trade-in vehicle is part of the transaction, the licensed dealer enters the details of any outstanding loan on the vehicle on a standard form, including the relevant financial institution and the amount due at the time of the transaction. From this information, the dealer determines how much he is owed upon completion of the transaction. The dealer receives his payment for the purchased vehicle either from the purchaser or from an institution financing the transaction. The dealer, rather than the purchaser, is then responsible for making sure that any lien appearing on the trade-in's certificate of title is paid off and for certifying such payment to the Wisconsin Department of Transportation.

When purchasers traded in vehicles, Andrews filled out all of the required paperwork and certified to the Wisconsin Department of Transportation that any liens had been paid off in full. But, rather than actually paying off the liens, Andrews made payments to the lien holders— usually a bank. Through this scheme, Andrews could continue using the lien holders' funds without the lien holder knowing that the security for the loan (the vehicle) had actually been sold and that the lien had been fraudulently removed from the title. Andrews engaged in this conduct from January 2000 through January 2006, stealing in the vicinity of one million dollars.

The presence investigation report recommended a two-point adjustment for Andrews's role in the offense pursuant to U.S.S.G. § 3B1.3 due to his abuse of a position of trust. Andrews's counsel objected to the adjustment and argued that Andrews's position as a car dealer does not qualify as a position of trust, public or private. At the sentencing hearing, the district court found that Andrews had held a position of trust, and that he abused it in a way that significantly facilitated his commission or conceal-ment of his crime. The court stated: "You were licensed as an automobile dealer. Your customers trusted you to pay off the liens on their trade-in vehicles as promised, and in accordance with state regulations, and the purchasers of those vehicles relied on your certifications that the vehicles were not encumbered." R. 18, p. 12.

The two-point adjustment resulted in a total offense level of twenty-three. Paired with a criminal history category of II, this resulted in an advisory guideline range of fifty-one to sixty-three months' imprisonment.[1] The district court sentenced Andrews to sixty months' impris-onment as well as $110,045.25 in restitution.

## II. ANALYSIS

Andrews raises only one issue on appeal: whether the district court properly applied the two-point role in the

---

[1] The question of whether Andrews's sentence would still have fallen within the guidelines range without the two-point ad-justment was raised at oral argument and Andrews's counsel submitted a supplemental filing on the issue thereafter. Without the adjustment, Andrews's offense level is twenty-one, leading to a guidelines range of forty-one to fifty-one months. As An-drews was sentenced to sixty months' imprisonment, we need not consider the effect that overlapping ranges might have had on our decision.

offense adjustment for his abuse of a position of trust. We review the district court's interpretation and application of the Guidelines *de novo*, and its findings of fact for clear error. *United States v. Bothun*, 424 F.3d 582, 586 (7th Cir. 2005); *United States v. Frykholm*, 267 F.3d 604, 612 (7th Cir. 2001) ("We review *de novo* the district court's interpretation of what constitutes a 'position of trust.'").

The § 3B1.3 adjustment applies when "the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S.S.G. § 3B1.3. In order to determine whether the adjustment is appropriate for a particular defendant, we ask: "1) whether the defendant occupied a position of trust; and 2) whether his abuse of the position of trust significantly facilitated the crime." *United States v. Stewart*, 33 F.3d 764, 768 (7th Cir. 1994) (citing *United States v. Boyle*, 10 F.3d 485, 488 (7th Cir. 1993)); *see also United States v. Fife*, 471 F.3d 750, 753 (7th Cir. 2006). "District courts need not be overly formal when determining whether a given position is one of trust; rather, they should look beyond labels, to the nature of the position the defendant is in and the responsibilities entrusted to him." *Fife*, 471 F.3d at 753 (citing *United States v. Snook*, 366 F.3d 439, 445 (7th Cir. 2004); *United States v. Mabrook*, 301 F.3d 503, 510 (7th Cir. 2002)); *see also United States v. Davuluri*, 239 F.3d 902, 908 (7th Cir. 2001).

A defendant may occupy a position of trust if he has been given "access or authority over valuable things." *United States v. Lamb*, 6 F.3d 415, 421 (7th Cir. 1993). Positions of trust are often characterized by great discretion to act on another's behalf. *United States v. Baldwin*, 414 F.3d 791, 799 (7th Cir. 2005); *Davuluri*, 239 F.3d at 909 (citing *United States v. Hernandez*, 231 F.3d 1087, 1091 (7th Cir. 2000); *United States v. Hoogenboom*, 209 F.3d 665, 671

(7th Cir. 2000); *United States v. Gellene*, 182 F.3d 578, 596 (7th Cir. 1999)). Additionally, a position of trust significantly facilitates a crime when it makes the crime either easier to commit or more difficult for others to detect. *Stewart*, 33 F.3d at 768 (citing *United States v. Gould*, 983 F.2d 92, 94 (7th Cir. 1993)).

The § 3B1.3 adjustment applies not only to public positions of trust, but also to private positions of trust. *Baldwin*, 414 F.3d at 797-99 (affirming application of abuse of trust adjustment where defendant used years-long friendship to convince victim to invest millions of dollars); *United States v. Strang*, 80 F.3d 1214, 1220 (7th Cir. 1996) (affirming application of abuse of trust adjustment where defendant, although not a licensed investment broker, befriended victims and convinced them to invest in fraudulent scheme). While we draw no bright line where the abuse of a position of trust begins or ends, more than a mere contractual or arm's length commercial relationship is required. *United States v. Dorsey*, 27 F.3d 285, 289 (7th Cir. 1994) (citing *United States v. Parker*, 25 F.3d 442 (7th Cir. 1994)).

Andrews relies heavily on *United States v. Dorsey* where we reversed the imposition of an abuse of trust adjustment to the sentence of a car dealer who defrauded a bank. 27 F.3d 285. Dorsey obtained a "floor-plan" loan from his bank for the purchase of cars directly from the manufacturer. *Id.* at 287. Dorsey then sold those cars, while representing to his bank that the cars remained unsold at his dealership. *Id.* This allowed Dorsey to use both the loan money and the proceeds from the sales for his personal use. *Id.* We reversed the district court's application of the position of trust adjustment in *Dorsey*, holding that he was merely engaged in a standard commercial relationship with the bank. *Id.* at 289.

The circumstances in *Dorsey* stand in contrast with those of *United States v. Stewart*. 33 F.3d at 764. Stewart, a

licensed insurance broker, solicited elderly customers to purchase annuities to fund their own funerals on a pre-need basis as a legal way of reducing their financial estates in order to qualify for Medicaid funds for nursing home expenses. 33 F.3d at 766. Rather than actually securing payment of their funeral expenses, Stewart converted his customers' investments for his own use while representing to the designated funeral directors that the annuities had been purchased. *Id.* We held that the district court clearly erred in not applying the § 3B1.3 adjustment. *Id.* at 770. Stewart could not have purchased the annuities if he was not a licensed insurance broker, and his licensed status also enabled him to convince the funeral directors that their services would be funded. *Id.* at 768-69. While licensed status does not *per se* place an individual in a position of trust, it is one factor among many to be considered in the factual context of the case. *See id.* at 766-70.

The facts of this case are more akin to *Stewart* than to *Dorsey*. Andrews was licensed by the state of Wisconsin as a retail vehicle dealer. His licensed status subjected him to Wisconsin Department of Transportation regulations requiring him to pay off his customers' prior loan obligations and to certify such payment to the Department of Transportation. His responsibility to remove the liens took the situation out of the purchasers' hands, and his certification to the Department of Transportation allowed him to conceal his crime.

Andrews argues that the mandatory nature of his responsibilities as a licensed dealer is precisely why he did not hold a position of trust. Because positions of trust are often characterized by broad discretion, Andrews argues that his obligation to pay off his customers' liens cannot place him in a position of trust. But Andrews was entrusted with his customers' money to act on their behalf. His customers need not have given him assets

and told him to do what he pleased with them. They trusted him to act in their interests and in accordance with law, and his licensed status fostered that trust and his concealment of his actions.

Andrews's licensed status and responsibility to act on behalf of his customers placed him in a position of trust. His abuse of that position gave him control of the assets and allowed him to conceal his actions by certifying payment to the Wisconsin Department of Transportation. The district court's application of the two-point adjustment for an abuse of a position of trust pursuant to § 3B1.3 was not clearly erroneous.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

 

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*