**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.                                                        No. 06-1296

CATHERINE ILEEN SPEAR,

  Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 06-CR-77-LTB)**

Lynn C. Hartfield, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

James C. Murphy, Assistant United States Attorney (Troy A. Eid, United States Attorney, and Kathleen L. Torres, Assistant United States Attorney, with him on the brief) Office of the United States Attorney, Denver, Colorado, for Appellee.

Before **TYMKOVICH**, **EBEL**, and **HOLMES**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Catherine Spear worked as a federal immigration employee responsible for the intake of applications submitted by persons applying for changes in their

immigration status. Instead of processing the applications, she kept the fees accompanying the applications and then threw the applications in the trash.

After her scheme was uncovered, she pleaded guilty to two counts of embezzlement of government funds in excess of $1,000, in violation of 18 U.S.C. § 641. Applying the two-level enhancement for abusing a position of public trust pursuant to § 3B1.3 of the U.S. Sentencing Guidelines (USSG), the court sentenced her to 14 months in prison. She now appeals that sentence.

We have jurisdiction under 28 U.S.C. § 1291. Concluding that Spear's position lacked the authority and discretion required for the abuse of public trust enhancement, we REVERSE the district court and REMAND for resentencing.

## I. Background

Catherine Ileen Spear worked as an Examinations Assistant in the United States Citizenship and Immigration Services Bureau (USCIS) in Denver, Colorado. The USCIS handles applications and petitions regarding various citizenship and immigration matters. Many submissions require payment of a fee, which the USCIS collects and processes. Spear's position included processing the numerous submissions mailed into the USCIS as well as collecting, recording, and depositing any accompanying fees. She also was responsible for preparing program reports, managing travel for the Denver office, and addressing building maintenance issues. She did not have the authority to approve immigration applications.

In early 2005, several applicants notified USCIS that their applications had not been processed even though their money orders had been cashed. After an investigation, the government determined Spear had stolen the funds. She accomplished this by covering the first two letters from the payee line on money orders submitted payable to "USCIS," relying upon the remaining "CIS" notation to deposit the funds into her own accounts (based on her matching initials—Catherine Ileen Spear). Forty-six money orders from immigration applications totaling $11,210 were deposited into Spear's personal bank account. Spear admitted, after depositing the funds into her personal bank account, she discarded the accompanying applications.

Spear was charged with sixteen counts of embezzlement of government property as well as an enhancement provision that applies when the value of the embezzled property exceeds $1,000. She pleaded guilty to two counts of embezzlement and the enhancement provision.

Prior to sentencing, the presentence investigation report evaluated two possible sentence enhancements: (1) targeting vulnerable victims pursuant to USSG § 3A1.1, and (2) abusing a position of trust pursuant to USSG § 3B1.3. The report concluded that neither enhancement was merited. Nonetheless, the government argued for both enhancements at sentencing. The district court denied the government's request for the § 3A1.1 vulnerable victim enhancement, but agreed to apply the § 3B1.3 abuse of trust enhancement. Based on this

determination, two sentencing levels were added, doubling her maximum sentence from 6 months to 12 months.

The district court relied on three grounds for the enhancement: (1) a letter submitted from a supervisor claiming Spear was in a position of trust, (2) Spear's job responsibilities as identified in a prior performance evaluation, and (3) concerns that Spear's misconduct further complicated an already complicated immigration process, especially for those unfortunate families seeking citizenship for foreign-born, adoptive children. Moreover, even after applying the abuse of trust enhancement, the district court *sua sponte* varied upwards from the guidelines range of 6-12 months and sentenced Spear to 14 months because of the consequences her crime imposed on innocent victims enmeshed in the immigration system.

On appeal, Spear challenges the enhancement, the reasonableness of her sentence, and a lack of pre-sentence notice regarding the *sua sponte* upward variance.

## II. Discussion

"Whether a defendant occupied a position of trust under USSG § 3B1.3 is generally a factual matter" that we review for clear error. *United States v. Haber*, 251 F.3d 881, 890–91 (10th Cir. 2001). We review a district court's interpretation of the Guidelines *de novo* to see if the correct standard was applied to the factual findings, *id.* at 890, and whether the court's "determination that the facts justify an

abuse-of-trust enhancement" was correct. *United States v. Britt*, 388 F.3d 1369, 1371 (11th Cir. 2004). In this case, no real dispute exists as to the district court's factual findings. The question is whether the district court applied the proper legal standard in determining whether Spear occupied a position of trust. We conclude it did not.

## A. Legal Framework

The Guidelines contain a special provision allowing courts to enhance sentences for abuse of a position of trust. "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." USSG § 3B1.3.

The government must satisfy two elements to meet § 3B1.3, establishing: (1) whether the person occupies a position of trust, and (2) whether the position of trust was used to facilitate significantly the commission or concealment of the crime. USSG § 3B1.3, *see United States v. Parrilla Roman*, 485 F.3d 185, 190–91 (1st Cir. 2007) (discussing two-step process); *United States v. Andrews*, 484 F.3d 476 (7th Cir. 2007); *United States v. Morris*, 286 F.3d 1291, 1295 (11th Cir. 2002). In this case, the analysis falters primarily at the first step.

In defining a position of public or private trust, the Guidelines' Application Note 1 to § 3B1.3 provides that:

> "Public or private trust" refers to a *position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)*. Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.

USSG § 3B1.3, cmt. n.1 (emphasis added).

.

The commentary goes on to illustrate the scope of the enhancement—it applies, for example, to professionals like lawyers or doctors, but not to bank tellers or hotel clerks.[1]

Our cases interpreting the guideline make clear that the term "position of trust" is a bit of a misnomer. It actually has little to do with *trustworthiness* and everything to do with *authority* and *discretion*.

Our recent decision in *United States v. Edwards*, 325 F.3d 1184 (10th Cir. 2003), a case involving a clerk in an insurance company, is our most thorough analysis of the enhancement to date. In *Edwards*, we started with the simple observation that the establishment of trust and confidence inheres in most fraud cases, but that the "enhancement is not meant to apply in every case of fraud." *Id.*

---

[1] "This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors." USSG § 3B1.3, cmt. n.1.

at 1187 (quoting *United States v. Koehn*, 74 F.3d 199, 201 (10th Cir. 1996)).  We

emphasized, moreover, that the lack of "any [] *authority* to make substantial

discretionary judgments" is key in determining whether the enhancement applies.

*Id.* (emphasis added); *see also United States v. Reccko*, 151 F.3d 29, 31 (1st Cir.

1998) (recognizing "trust" in § 3B1.3 is a function of the Sentencing Guidelines

"creat[ing] their own vocabulary" and "defin[ing] terms in ways that might strike

lay persons as peculiar."); *United States v. Ragland*, 72 F.3d 500, 503 (6th Cir.

1996) (characterizing position of trust as a "term of art").  "The fact that [the

defendant] was trusted by her employer with significant responsibility . . . is not

determinative." *Edwards*, 325 F.3d at 1187.[2]

By defining a "position of public or private trust" as a position of authority

characterized by the exercise of professional or managerial discretion, we more

accurately identify those defendants eligible for the enhancement.  The

enhancement is concerned with persons in positions of authority abusing their lack

---

[2]  The government relies in part on our 1992 decision in *United States v. Williams*, 966 F.2d 555 (10th Cir. 1992), which identifies several factors to consider in applying the abuse of trust enhancement.  That decision, however, predated the significant modifications in the explanatory Application Note that the United States Sentencing Commission adopted in 1993. *See Edwards*, 325 F.3d at 1188 (recognizing that the new language in Application Note 1 "deliberately set the bar at a higher level"); *Reccko*, 151 F.3d at 34 (finding the amendments emphasized the existence of managerial discretion, thereby limiting the import of prior decisions defining position of trust); *United States v. Smaw*, 22 F.3d 330 (D.C. Cir. 1994) (explaining how 1993 amendments affected the definition and determination of a position of trust).  In light of the 1993 amendments, *Williams* is of limited significance when evaluating § 3B1.3.

of supervision to commit or conceal wrongdoing; therefore, it is reserved for those with professional or managerial discretion. Such authority is characterized by "*substantial* discretionary judgment . . . given considerable deference" and is contrasted against "employees whose responsibilities are *primarily non-discretionary* in nature." USSG § 3B1.3, cmt. n.1 (emphasis added). The discretion necessary to qualify for the enhancement exists where the person charged had the authority to make broad case-by-case decisions for the organization. *Edwards*, 325 F.3d at 1188 (citing *United States v. Tiojanco*, 286 F.3d 1019, 1021 (7th Cir. 2002)). This discretion requires more than engaging in mere ministerial tasks directed by standardized office protocols.

Accordingly, to determine whether a defendant occupies a position of trust, we must undertake a functional analysis of job responsibilities and examine whether those duties were merely ministerial or were, in fact, managerial. Indications of substantial discretionary judgment under the § 3B1.3 enhancement include the authority to engage in case-by-case decision-making, to set policies, and to grant exceptions to governing policies or protocols. These factors are a non-exhaustive, and no one factor is dispositive of the analysis.

*Edwards* illustrates the application of these considerations. Employing a functional analysis, we analyzed whether the managerial discretion was present in the duties of an hourly wage employee in the accounting division of an advertising company. Edwards embezzled over $30,000 by failing to post certain customer

payments and then re-routing those payments to her boyfriend's bank account. She covered her tracks by posting false credits on the accounts of the customers whose checks she diverted to her boyfriend's account. A bank teller noticed the discrepancy between the advertising company as payee and the account number on the back of the checks, leading to her arrest.

Edwards's duties included, "receiving checks mailed in by [] customers, preparing them for deposit, posting the payments to customer accounts and the cash receipts journal, sending out bills, calculating customer account balances, and compiling and forwarding to sales personnel and her supervisors reports reflecting this data." *Edwards*, 325 F.3d at 1185–86. In addition, Edwards was responsible for posting credits to customer accounts, but she had no authority to grant credits. Applying § 3B1.3, we determined her "tasks were solely ministerial." *Id.* at 1186.

The government in that case, like here, alleged that Edwards's specialized accounting skills, minimal oversight, virtually exclusive control over accounts receivable as well as customer billing records, and use of her position to conceal her defalcation all warranted the § 3B1.3 enhancement. Disagreeing, we were persuaded that Edwards did not have discretion to grant credits herself in finding she was not in a position of trust. She was not free to make decisions regarding particular expenditures or other business choices in case-by-case circumstances or to make exceptions to company policy. While only nominal review by a supervisor made her job responsible, it remained ultimately ministerial. *See*

*United States v. Humphrey*, 279 F.3d 372, 379–80 (6th Cir. 2002) ("We have previously established that the level of discretion rather than the amount of supervision is the definitive factor in determining whether a defendant held and abused a position of trust."). "Opportunity and access do not equate to authority, or to the kind of 'substantial discretionary judgment'" required for the § 3B1.3 enhancement. *Edwards*, 325 F.3d at 1187. In short, emphasizing an inquiry into the level of discretion, *Edwards* tells us to look to the employee's job as it is performed and not how it looks on paper.

Finally, if the defendant occupies a position of trust, we turn to step two of the § 3B1.3 enhancement to determine if the position was used in a "manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. That step is satisfied where the person's duties allow the more effective commission of the crime by "making the detection of the offense or the defendant's responsibility for the offense more difficult." USSG § 3B1.3, cmt. n.1.

## B. Applying the Functional Analysis

Given this legal framework, we conclude Spear lacked the substantial discretionary authority required for the Guidelines' enhancement.

### 1. *Spear's Duties Lack Substantial Discretionary Authority*

-10-

We start with Spear's job as an Examinations Assistant. Although the record does not contain great detail, the district court relied primarily on written performance evaluations Spear's managers used to assess her job responsibilities.

The relevant performance evaluation included seven categories of duties for which Spear was responsible. For purposes of the enhancement, the district court focused on four categories: (1) "Assists in developing practices, procedures, and work patterns for the work of the clerical unit and proposes appropriate changes;" (2) "Conducts on-going analysis of work load data, productions, and other reports; determines whether procedures are being followed and makes suggestions for improvements;" (3) "Performs liaison [sic] and answers inquiries from individuals, attorneys, or groups from the general public and from other service and non-service organizations and professional conduct;" and (4) "Collects, records, verifies, safeguards and deposit [sic] fees for applications." Sent. Tr. at 26–28.

In evaluating these four categories, the district court concluded that Spear exercised a position of trust. While we agree the court assessed the correct job categories, we disagree with its conclusion. None of these particular duties implicates substantial discretionary authority.

Several reasons support our conclusion. First, the fact that Spear "assist[ed]" and "ma[de] suggestions for improvements," (categories 1 and 2) simply means that Spear assisted *her superiors* and made suggestions *to them*.

-11-

Nothing in the evaluations suggests Spear exercised individual authority over particular applications. Neither category indicates Spear was in a position to set protocol or to depart from protocols already set by others. An employee who places suggestions in a box does not stand on the same sentencing ground as the employee who empties the box and determines which suggestions will be implemented or discarded. The former's duties are ministerial, while the latter's constitute a position of trust.

Next, the tasks outlined in category 3—"[c]ollects, records, verifies, safeguards and deposit [sic] fees for applications"—are similarly ministerial.

Finally, the duties listed in category 4—acting as a liaison and answering questions from the public—come the closest to managerial discretion indicating a position of trust. But there is no indication in the record that Spear's responsibilities in this regard left her with decision-making authority or discretion over the immigration applications that crossed her desk in a manner that could facilitate her crime.

In short, Spear's embezzlements are not characterized as flowing from any authority on Spear's part, nor did her job as Examinations Assistant significantly facilitate the crime or impede its detection. In fact, Spear employed a crude method of depositing money orders that were submitted with applications to USCIS into her own bank account and then throwing away the accompanying applications. After complaints from applicants, the scheme was promptly

uncovered. No evidence exists that Spear used any discretionary authority to facilitate or conceal her crime. She did not have discretion to approve or deny applications, nor does the record show she could reject applications that were incomplete or inaccurate. Her only authority was to process new applications and put them in the pipeline for substantive review. Her theft was accomplished by being in the right place at the right time, i.e., opportunity and access, not by exercising the cloak of authority to stave off inquiry or decision-making power to cover her tracks.

The district court arrived at a different result by applying the Guidelines inconsistently with the ruling of *Edwards*. The district court made the appropriate inquiry by reviewing Spear's duties to determine whether she held a position of trust. It then compared Spear's duties to those of a bank teller and hotel clerk, two positions mentioned by the Guidelines as not involving a position of trust. *See* Sentencing Tr. at 26–27 (referring to Spear's duties as "more than just simply a bank teller;" "[s]omething more than simply being a teller or hotel clerk, certainly;" and "[a]gain, that is something more than the typical hotel clerk or bank clerk"). The commentary for § 3B1.3 contemplates a continuum of discretion from bank teller to professional. Somewhere along the continuum an employee moves from ministerial to discretionary in the performance of job duties.

But instead of asking whether Spear's duties included tasks more sophisticated than the typical bank teller or hotel clerk, the district court should have asked whether those duties gave Spear functional *managerial or professional* discretion—such as the responsibility to (1) differentiate case-by-case situations, (2) set policies and protocols, (3) diverge from policies and protocols (thereby indicating managerial or professional discretion)—or whether her duties were primarily subject to non-discretionary rules (thereby indicating the ministerial or clerical nature of her work).

In applying the enhancement, the district court also relied heavily on a letter from a USCIS supervisor labeling Spear's position as one of trust. The conclusory opinion of a supervisor does not substitute for the functional analysis required by *Edwards* ("job titles themselves do not control [the position of trust inquiry]; actual duties and authorized activities do," 325 F.3d at 1187). Even so, the court found relevant the letter's emphasis on Spear's oath to perform the duties of her office with honor. But, again, a position of trust for purposes of § 3B1.3 turns upon discretionary authority, not on one's veracity or a pledge to fulfill a position honestly.[3] *See United States v. Hirsch*, 239 F.3d 221, 227 (2d Cir. 2001) ("An abuse of trust enhancement may not be imposed on a defendant convicted of fraud

---

[3] Our decision in *United States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995), is not to the contrary. In analyzing an official oath in the § 3B1.3 context, while acknowledging the importance of a pledge, we found the defendant occupied a position of trust because he was a police officer, not because he took an oath. *Id.* at 1525.

solely because of a violation of a legal obligation to be truthful and a victim's reliance on a misrepresentation.").

Finally, the district court was influenced by the harm that Spear inflicted on the unfortunate victims whose applications crossed her desk. Spear was throwing "a monkey wrench of huge proportion into the gears that grind through this Byzantine immigration process . . . ." Sent. Tr. at 29. While such considerations are entirely appropriate when applying the 18 U.S.C. § 3553(a) sentencing factors, it is inappropriate to use the results of Spear's wrongdoing in deciding whether the § 3B1.3 enhancement applies. Nothing in the language of § 3B1.3 or its application notes look to the outcome of the misconduct, rather it is the position and its responsibilities that matter in this inquiry. Even a lower level employee can wreak havoc.

In sum, the district court correctly identified Spear's duties as the appropriate object of inquiry for whether she occupied a position of trust, but the court guided that inquiry by applying the wrong legal standard. The proper standard asks whether Spear's duties were bounded by predetermined rules and protocols so as to be ministerial or whether she had the substantial freedom in her duties that arises from discretionary authority signifying a position of trust. Applying this standard, she did not.

*2. Spear's Duties Are Similar to Those in* Edwards

Seeking to distinguish our case law, the government urges us to recognize three distinctions between Spear's crime and *Edwards*: (1) only the employer was hurt in *Edwards*, (2) Spear's violation involved government services, and (3) the employee in *Edwards* had no authority to post credits to accounts so she was a conduit that did not perform "the [financial] verification and safeguarding function as well." Aple. Answer Br. at 20. We disagree that these distinctions make a difference here.

First, as we explained, the consequences of Spear's actions are not relevant in determining whether to apply the § 3B1.3 enhancement. Nowhere in its text does the § 3B1.3 enhancement suggest differing standards when the crime hurts only the employer and not its customers. While the relationship to the victim can in some instances bolster the trust assessment, *see, e.g., Hirsch*, 239 F.3d at 227–28; *United States v. Hart*, 273 F.3d 363, 377–78 (3d Cir. 2001), the mere identity of the victim is not probative. Nowhere in *Edwards* did we rely on such a proposition as part of our justification for not applying the enhancement. The emphasis instead is on whether the position was used to significantly facilitate or conceal the crime because of the freedom enjoyed by discretionary decision makers.

Second, the government intimates that the unique nature of USCIS as a government entity, in particular having a monopoly on providing immigration services, distinguishes the situation here from *Edwards*. But the language of

-16-

§ 3B1.3 does not distinguish between private or public positions of trust—both are treated equally—nor does the commentary distinguish between public and private sector violations.

In a related comparison, the district court also analogized to postal service employees, who qualify for positions of trust under Application Note 2 of § 3B1.3's commentary. Sent. Tr. at 25. ("Ms. Spear occupied a position - - if a United States postal employee holds a position of trust, Ms. Spear held a higher position of trust."). Postal service employees, however, are an express exception to the managerial or professional discretion rule and should not be used to analogize to whether the defendant occupied a position of trust. *See United States v. Smaw*, 22 F.3d 330, 332–33 (D.C. Cir. 1994).

Before amended in 2005, Application Note 1 of § 3B1.3 read, "Notwithstanding the preceding paragraph, because of the special nature of the United States mail an adjustment for an abuse of a position of trust will apply to any employee of the U.S. Postal Service who engages in the theft or destruction of undelivered United States mail." The 2005 amendment struck the language describing the special nature of the postal service in response to the Identity Theft Penalty Enhancement Act, Public Law 108-275, 118 Stat. 831 (2004), which directed the Commission to add enhancements for identity theft to § 3B1.3. In so doing, the Commission partitioned out Application Note 2 for listing the two categories of defendants that would receive the enhancement *notwithstanding* the

fact they would not otherwise qualify under the standards set by Application Note 1 as employees in a position of trust. This means postal employees are subject to the enhancement for different reasons than defendants who meet the requisites of Application Note 1. Therefore, postal employees should not be used in a comparative analysis that attempts to determine whether a defendant wielded sufficient professional or managerial discretion to qualify for the § 3B1.3 enhancement.

Finally, Spear was no more or less responsible for office monies than the defendant in *Edwards*. She did not have authority to dispose of, accept, or reject applications, just as Edwards had no authority to post credits.[4] She only had the power to determine whether an applicant had checked the necessary boxes, filled in the necessary blanks, provided the requisite information, and paid the necessary fees.

In sum, Spear occupied a position similar to the defendant in *Edwards*. While their conduct was certainly abusive, by virtue of their job responsibilities neither qualifies for an enhancement for abuse of trust under § 3B1.3. Accordingly, the district court erred in applying the enhancement in this instance.

----

[4] Spear's inability to approve applications is significant here. If she could approve or deny applications, then she might exhibit the type of decision-making authority sufficient to qualify for the enhancement. *See United States v. Britt*, 388 F.3d 1369, 1371 (11th Cir. 2004), *judgment vacated by* 126 S. Ct. 411 (2005), *and reinstated in relevant part by* 437 F.3d 1103 (11th Cir. 2006) (upholding application of § 3B1.3 where clerk for Social Security Administration had discretion to approve applications for Social Security Account Number cards).

**C. Reasonableness of the Sentence**

Spear also challenges the reasonableness of her sentence. She claims that the district court erred by (1) sentencing her to two months above the advisory Guidelines range and employing improper considerations in reaching its decision, and (2) failing to provide notice before imposing the enhancement.

Sentencing in this case occurred before our recent decision in *United States v. Atencio*, 476 F.3d 1099, 1103–04 (10th Cir. 2007), which held that advance notice is required for varying above or below the relevant sentencing range. Since we are reversing the applicability of the abuse of trust enhancement under § 3B1.3, we need not review the substantive reasonableness of her sentence or the lack of notice regarding the district court's *sua sponte* variance.

On remand, the district court will apply *Atencio* and notify the parties if the court plans to sentence above or below the relevant sentencing range suggested by the Guidelines.

### III. Conclusion

Accordingly, we REVERSE the district court finding that Spear occupied a position of trust subject to the enhancement of § 3B1.3 of the U.S. Sentencing Guidelines and REMAND to the district court for sentencing consistent with this opinion.