**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

        Plaintiff–Appellee,

v.

SHAWN RICHARD MERRIMAN,

        Defendant–Appellant.

No. 10-1439

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 09-CR-00369-MSK)**

_____

Submitted on the briefs:[*]

Patrick L. Ridley of Ridley, McGreevy, Winocur & Weisz, PC, Denver, Colorado, for Defendant–Appellant.

John F. Walsh, United States Attorney; Andrew A. Vogt, Assistant United States Attorney, Denver, Colorado, for Plaintiff–Appellee.

_____

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* F. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In early 2009, Appellant Shawn Merriman approached an otherwise unsuspecting U.S. Attorney's Office and disclosed he had engaged in a long-running Ponzi scheme that defrauded investors of over twenty-million dollars. At the time of his disclosure, Mr. Merriman offered several million dollars of assets to the government so that it could liquidate the assets and eventually remit the proceeds to Mr. Merriman's victims. He cooperated with authorities throughout the proceedings and ultimately pled guilty to one count each of mail fraud and forfeiture.

Mr. Merriman appeals two of the district court's sentencing decisions. First, he argues the court should have counted the assets he initially turned over to the government as a credit against his victims' measured aggregate loss, resulting in a two-point decrease. Second, he argues the court erred by finding he occupied a "position of trust" for a two-point enhancement.

Mr. Merriman does not challenge the substantive reasonableness of the district court's sentence; he only challenges the district court's calculation of the applicable Guidelines range. We thus evaluate his sentence for procedural reasonableness by "review[ing] the district court's legal conclusions regarding the Guidelines de novo and its factual findings for clear error." *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008).

For cases of fraud, Section 2B1.1 permits the sentencing court to increase

the offense level based on both the aggregate loss to the defendant's victims and the total number of victims involved. Relevant to this case, for losses between $20,000,001 and $50,000,000, the court may add twenty-two points, but for losses between $7,000,001 and $20,000,000, the court may only add twenty points. To calculate the aggregate loss, the sentencing court should credit against the victims' net loss "money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(E). "The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." *Id.* Here, because Mr. Merriman relinquished several million dollars worth of assets to the government at the time he turned himself in, we must determine whether these assets may be counted toward this credit. If this forfeiture may be credited against his victims' loss, the aggregated loss would fall below twenty million dollars, resulting in a corresponding enhancement decrease from twenty-two to twenty points.

The Application Notes unambiguously require two conditions to be met before any credits are earned: the money must be returned to the victim, and this return must occur before the offense was detected or discovered by a victim or the

government.  *See id.*  Here, the money was not returned by Mr. Merriman; rather, it was returned by the government after a later liquidation of Mr. Merriman's forfeited assets.  Even if we assume the government "acted jointly" with Mr. Merriman to return his victims' money, no money could have been returned until after Mr. Merriman turned himself in and disclosed his crimes to the U.S. Attorney.  "The purpose of the loss calculation under the Sentencing Guidelines is to measure the magnitude of the crime at the time it was committed."  *United States v. Swanson*, 360 F.3d 1155, 1169 (10th Cir. 2004) (internal quotation marks omitted).  Thus, "[t]he fact that a victim has recovered part of its loss after discovery of a fraud does not diminish a defendant's culpability for purposes of sentencing."  *Id.*  Nor do the Guidelines provide an exception for crimes that are detected because the defendant confesses his crime to the government.  Although the Guidelines permit a reduction for restoring victims' losses prior to the onset of any government involvement, they do not contemplate similar treatment when payments are not returned to the victims until after the crime has been discovered by the government and the defendant has, for example, additional motivation to use his ill-gotten gains as leverage in a plea negotiation or other self-serving purpose.

Mr. Merriman next challenges the district court's application of Section 3B1.3, which allows the court to enhance a sentence by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a

-4-

manner that significantly facilitated the commission or concealment of the offense." U.S. Sentencing Guidelines Manual § 3B1.3. Whether a defendant occupied a position of trust under Section 3B1.3 is generally a factual matter that we review only for clear error. *See United States v. Spear*, 491 F.3d 1150, 1153 (10th Cir. 2007).

Two elements must be met for Section 3B1.3 to apply: "(1) the person occupie[d] a position of trust, and (2) . . . the position of trust was used to facilitate significantly the commission or concealment of the crime." *Id.* The Application Note further explains that public or private trust is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.1. Thus, we do not apply Section 3B1.3 to all cases of fraud, *see United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003), but only where the defendant abused his lack of supervision to commit or conceal wrongdoing, *see Spear*, 491 F.3d at 1154.[1] This position of trust need only "contribute[] in some significant way" to the crime, *see* U.S. Sentencing Guidelines Manual §

---

[1] Mr. Merriman argues that the district court failed to properly apply the multi-factor test identified in *United States v. Williams*, 966 F.2d 555, 557 (10th Cir. 1992), to determine whether he was in a position of public or private trust. However, we decided *Williams* without benefit of the 1993 amendment in which the Commission expressly defined "public or private trust," as discussed above. Thus, "*Williams* is of limited significance when evaluating § 3B1.3." *Spear*, 491 F.3d at 1154 n.2.

3B1.3 cmt. n.1. There is no requirement for the position to be the exclusive or determinative cause of the crime's commission or concealment.

Here, the parties do not dispute that Mr. Merriman retained and exercised authority to make investments on behalf of his investors with complete discretion to invest however he desired. Investors did not scrutinize his financial accounting or investing decisions, nor was he obligated to disclose such matters. We see no clear error in the district court's conclusion that Mr. Merriman's authorized and exercised discretion and the resultant lack of transparency between Mr. Merriman and his investors significantly contributed to his ability to avoid detection. C*f. United States v. Chimal*, 976 F.2d 608, 614 (10th Cir. 1992) (holding that defendant's supervisory position enabled her to embezzle funds while avoiding detection over a long period of time). It does not matter whether Mr. Merriman could have perpetuated fraud without the same discretionary authority by nevertheless presenting his victims with false account balances and portfolio statements. Even if his fraud was perpetuated in part by circumstances other than his position of trust, Mr. Merriman's complete control over his investors' money significantly contributed to his fraud by "making the detection of the offense . . . more difficult." U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.1.

For the foregoing reasons, we therefore **AFFIRM**.